John R. Habashy, Esq. (SBN. 236708)
*john@lexiconlaw.com*
Tiffany N. Buda, Esq. (SBN. 232679)
*tiffany@lexiconlaw.com*
**LEXICON LAW, PC**
633 W. 5th Street, 28th Floor
Los Angeles, CA 90071
Telephone: (213) 223-5900
Facsimile: (888) 373-2107
*[Additional Counsel listed below]*

Attorneys for Plaintiff Lucine Trim and the Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| LUCINE TRIM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETWORK CAPITAL FUNDING CORPORATION, a Nevada corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO.: 8:20-cv-02251**<br><br>**COMPLAINT FOR VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. SECTION 227, ET SEQ.**<br><br>**CLASS ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

Additional counsel for Plaintiff and the Putative Class:

Daniel A. Edelman, Esq. (ILL #00712094)
(*Pro Hac Vice* To Be Submitted)
*courtecl@edcombs.com*
David Kim, Esq. (ILL # 6303707)
(*Pro Hac Vice* To Be Submitted)
*dkim@edcombs.com*
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
Telephone: (312) 739-4200
Facsimile: (312) 419-0379 (FAX)

1
CLASS ACTION COMPLAINT

Plaintiff Lucine Trim, individually and on behalf all others similarly situated, alleges as follows against Defendants Network Capital Funding Corporation, a Nevada corporation, and Does 1 through 10, inclusive:

## I. JURISDICTION AND VENUE

1. This Court has federal question subject matter pursuant to 28 U.S.C. §§ 1331 and 1337 (commerce) as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), a federal statute. (See *Mims v. Arrow Financial Services*, LLC, 132 S.Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005)).

2. This Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants conduct business within this District and have purposefully availed themselves of the laws and markets of the state of California and this District.

## II. INTRODUCTION

3. Plaintiff Lucine Trim, individually and on behalf all others similarly situated, brings this action against Defendant Network Capital Funding Corporation, a Nevada corporation, and Does 1-10, to stop Defendants' practice of making phone calls to cellular telephones using an automated telephone dialing system and/or a prerecorded message or artificial voice, and to obtain redress for all persons injured by its conduct.

## III. THE PARTIES

4. Plaintiff, Lucine Trim is an individual who resides in North Hollywood, California.

5. Defendant Network Capital Funding Corporation is a Nevada corporation with offices at 7700 Irvine Center Drive, Suite 300, Irvine, CA 92616. Its registered agent is Tri Nguyen at that address.

6. The true names and capacities of Defendants Does 1 through 10 are currently unknown to Plaintiff, who alleges that Does 1 through 10 are responsible in some manner for the injuries sustained by Plaintiff as hereinafter alleged. Plaintiff requests leave to file amendments to this Complaint alleging the true names and capacities of Does 1 through 10 when the same have been ascertained.

7. Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned each of the Defendants was an agent, servant, employee, and/or joint venture of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, and/or joint venture, and each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said facts.

8. Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its/his/her primary wrongdoing and realized that its/his/her conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

9. There is a unity of interest between Defendants, and each acts as the alter ego of the other.

### IV.     THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. §227

10. Congress enacted the TCPA in 1991 in response to a growing number of consumer complaints regarding telemarketing robocalls.

11. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and

decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243 (Dec. 20, 1991); *see also Mims v. Arrow Fin. Servs., LLC*, 132 S Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

12. Consumer complaints about this conduct have only increased since then. "If robocalls were a disease, they would be an epidemic." Rage Against Robocalls, Consumer Reports (July 28, 2015). "Robocalls" are the #1 consumer complaint in America today. The Federal Trade Commission (FTC) and Federal Communications Commission (FCC) regularly cite "unwanted and illegal robocalls" as their number-one complaint category. The FTC received more than 1.9 million complaints filed in the first five months of 2017 and about 5.3 million in 2016. The FCC has stated that it gets more than 200,000 complaints about unwanted telemarketing calls each year. These complaints are on top of the complaints each state AG's office receives and also does not include the millions of unreported calls.

13. In an effort to curb these unwanted calls, the TCPA regulates, *inter alia*, the use of automated telephone equipment (a/k/a "autodialers" or "robodialers") to make calls to any cellular telephone number. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

14. In 2012, the FCC prohibited "any telephone call that includes or introduced an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2). This prior express written consent requirement became effective on October 16, 2013.

///

## V. FACTUAL ALLEGATIONS

15. Plaintiff Lucine Trim is the subscriber to cellular telephone number xxx-xxx-2347 and pays the cell phone bills.

16. On September 16, 2020, at 9:35 am, Plaintiff received an autodialed call on her cell phone from 818-350-8745. After a pause, a live person got on the line and offered mortgage loan services to Plaintiff.

17. Later on September 16, 2020, Plaintiff received an email from Brad Gibson from Network Capital Funding Corporation, a copy of which is attached as <u>Exhibit A</u>. Plaintiff responded to the email and asked Network Capital Funding to stop calling her.

18. On September 30, 2020, Plaintiff received an autodialed call on her cell phone from 818-643-3414. After a pause, a live person got on the line and offered mortgage loan services to Plaintiff. After Plaintiff ended the call, she called back the number 818-643-3414 and requested an email be sent to her so she could determine who was calling her.

19. Later on September 30, 2020, Plaintiff received an email from Martin Marquez at Network Capital Funding Corporation, a copy of which is attached as <u>Exhibit B</u>.

20. Later on September 30, 2020, Plaintiff received a call from Martin Marquez at Network Capital Funding Corporation, and requested that he remove her cell phone number because she is not a homeowner and is not interested.

21. Network Capital Funding Corporation, or an agent on its behalf, operates a call center, where automated equipment is used to place large numbers of telemarketing calls. The equipment has the present capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.

22. Plaintiff may have received other unsolicited, automated or prerecorded telemarketing calls placed by or on behalf of Network Capital Funding Corporation.

23. Plaintiff has not consented to the receipt of any calls from Defendants.

24. By calling Plaintiff, Defendants caused Plaintiff and the putative class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls, consumption of electricity in cost per-kilowatt required to recharge the cell phones, consumption of money or purchased blocks of calls, and wear and tear on telephone equipment. The calls took time to receive and Plaintiff's statutory right of privacy was invaded.

25. Discovery may reveal additional unsolicited, automated telemarketing calls or prerecorded and/or artificial voice calls to Plaintiff's cell phone placed by or on behalf of Network Capital Funding Corporation.

26. The FCC has also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 (¶165) (2003).

27. Defendant Network Capital Funding Corporation is responsible for making or causing the making of unsolicited, automated telemarketing and pre-recorded and/or artificial voice calls. On information and belief, the purpose of the calls is to solicit persons for mortgage services from Defendants.

28. Defendant Network Capital Funding Corporation, as the entity whose product or services were advertised, derived economic benefit from the phone calls.

29. On information and belief, the unsolicited, automated telemarketing and pre-recorded and/or artificial voice calls were made as part of a mass broadcasting of automated, unsolicited phone calls.

6
CLASS ACTION COMPLAINT

30. On information and belief, Defendants have made unsolicited, automated telemarketing and pre-recorded and/or artificial voice calls to cellular phones of at least 40 other persons.

31. There is no reasonable means for Plaintiff or other recipients of Defendants' unsolicited, automated telemarketing and pre-recorded and/or artificial voice calls to avoid receiving them.

32. The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case.

33. The calls were made to consumers who never requested to receive them, never engaged in any interaction with Defendants and are made on a repeat basis without consent.

34. Defendants either negligently or willfully violated the rights of Plaintiff and other recipients in placing the calls or arranging for the calls to be made.

## VI. CAUSE OF ACTION – VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. §227, ET SEQ.

35. Plaintiff incorporates by reference paragraphs 1-32 as if set forth herein in their entirety.

36. The TCPA provides as follows at 47 U.S.C. § 227(b):

> "§ 227. Restrictions on use of telephone equipment
>
> ... (b) Restrictions on use of automated telephone equipment
>
> > (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-
> >
> > > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-
CLASS ACTION COMPLAINT

           (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; ….."

37. The TCPA, 47 U.S.C. § 227(b)(3) further provides:

    "Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State-

        (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

        (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

        (C) both such actions.

    If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph."

38. Defendants and/or their agents violated the TCPA by using equipment that placed automated calls to Plaintiff's and the putative class member's cell phones.

39. Defendants made unsolicited automated telemarketing calls to cellular telephone numbers belonging to Plaintiff and other members of the class.

40. By making unsolicited calls to Plaintiff and the class members, using an automated dialing system and without prior express consent, Defendants violated 47 U.S.C. §227(b)(l)(A)(iii).

41. Plaintiff and the class members are entitled to statutory damages.

42. Plaintiff and the putative class members suffered actual damages in the form of monies paid to receive the unsolicited robocalls, and their statutory right of privacy was invaded.

43. Defendants should be enjoined from committing similar violations in the future.

## VII. CLASS ACTION ALLEGATIONS

44. **Class Definition:** Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this action on behalf of a nationwide class of similarly situated entities and individuals ("the Class"), defined as follows: (a) all persons or entities who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658), (b) received a telephone call made by or on behalf of Defendant Network Capital Funding Corporation, (c) placed using an automated dialer or featuring an artificial voice or pre-recorded message.

45. Plaintiff reserves the right to modify the class definition as the contours and parameters of the class become apparent through discovery in this matter.

46. Excluded from the Class are: (1) Defendant Network Capital Funding Corporation, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Network Capital Funding Corporation or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

47. **Direct Harm:** Plaintiff and the members of the class were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through agents, illegally contacted Plaintiff and the Class Members via their cellular telephones by using an "autodialer" or "robodialer" or pre-recorded message or artificial voice, thereby causing Plaintiff and the

members of each class to incur certain telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid; and Plaintiff and Class members' privacy were invaded.

48. **Numerosity:** The exact number of class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Plaintiff alleges on information and belief, that there are more than 40 members of the class. Class members can be identified through Defendants' and/or their agents' records, or by other means.

49. **Typicality:** Plaintiff's claims are typical of the claims of other members of the classes, in that Plaintiff and the class members sustained damages arising out of Defendants' uniform wrongful conduct, including the making of unsolicited telephone calls.

50. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the class members, and Defendants have no defenses unique to Plaintiff. The questions of law and fact common to the proposed Class predominate over any questions affecting only individual members of the Class.

51. **Commonality and Predominance**: There are questions of law and fact common to the claims of Plaintiff and the class members, and those questions predominate over any questions that may affect individual members of the class. These include:

    a. Whether the equipment Defendants used to place the calls in question was an automatic telephone dialing system as defined by the TCPA;

    b. Whether Defendants systematically made automated calls to persons without prior express consent to receive such telephone calls;

    c.  Whether Defendants utilized an artificial or pre-recorded voice in making the telephone calls;

    d.  Whether Defendants violated the TCPA;

    e.  Whether class members are entitled to damages, including treble damages based on the willfulness of Defendants' conduct.

52. **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of the class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

53. **Uniform Relief Necessary:** This class action is appropriate for class certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making an award of damages.

54. Management of this class action is likely to present significantly fewer difficulties than those presented in many class actions, e.g., for securities fraud.

///

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and the class as follows:

   a. An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Edelman, Combs, Latturner & Goodwin, LLC and Lexicon Law, PC as Class Counsel;

   b. An award of statutory damages for each and every violation;

   c. Actual damages;

   d. An injunction restraining the conduct complied of;

   e. Cost of suit; and

   f. For such other and further relief as the Court deems necessary, just, and proper.

## IX.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, individually and on behalf of all others similarly situated, respectfully requests a trial by jury as to each and every claim for which it is so entitled.

///

///

///

///

///

///

///

///

///

///

CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| 1 | Dated: November 30, 2020 | By: */s/ John R. Habashy* |
| 2 | | John R. Habashy, Esq. (SBN 236708) |
| | | *john@lexiconlaw.com* |
| 3 | | Tiffany N. Buda, Esq. (SBN 232679) |
| | | *tiffany@lexiconlaw.com* |
| 4 | | **LEXICON LAW PC** |
| 5 | | 633 W. 5th Street, 28th Floor |
| | | Los Angeles, CA 90071 |
| 6 | | Telephone:  (213) 223-5900 |
| | | Facsimile:  (888) 373-2107 |

Daniel A. Edelman, Esq. (ILL #00712094)
(*Pro Hac Vice* To Be Submitted)
*courtecl@edcombs.com*
David S. Kim, Esq. (ILL # 6303707)
(*Pro Hac Vice* To Be Submitted)
*dkim@edcombs.com*
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
Telephone: (312) 739-4200
Facsimile: (312) 419-0379 (FAX)

**Attorneys for Plaintiff, and the Putative Class**

## **NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

Date: November 30, 2020                             *s/ John Habashy*
                                                    John Habashy

                                                    **Attorneys for Plaintiff and the Putative Class**

# DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

Date: November 30, 2020

*s/ John Habashy*
John Habashy

**Attorneys for Plaintiff and the Putative Class**